IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER DE CASTRO                                                                      PLAINTIFF

V.                              Civil No. 2:20-cv-2065-PKH-MEF

ANDREW M. SAUL, Commissioner,
Social Security Administration                                                              DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Christopher De Castro, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed his application for SSI on June 20, 2017, alleging disability since October 1, 2016, due to anxiety, post-traumatic stress disorder ("PTSD"), and back and left knee pain. (ECF No. 14-3, pp. 4, 22; ECF No. 14-5, pp. 2-7; ECF No. 14-6, pp. 34-35). An administrative hearing was held on September 18, 2018. (ECF No. 14-2, pp. 50-87). Plaintiff was present and represented by counsel.

Born in 1994, Plaintiff possessed a ninth-grade education and a General Educational Diploma. (ECF No. 14-2, pp. 27, 56). He had no past relevant work. Records indicate that he was discharged from the Army on January 16, 2015, after a mere two months of service, due to a

pre-existing "psychiatric disorder," namely anxiety and depression. (ECF No. 14-6, pp. 75-81; ECF No. 14-12, pp. 2-3).

On May 22, 2019, the ALJ found Plaintiff's degenerate disk disease ("DDD") of the lumbar spine, depressive disorder, and anxiety disorder to be severe. (ECF No. 14-2, p. 14). He concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). Further, the ALJ determined Plaintiff could perform medium work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (*Id*. at 16). With the assistance of a vocational expert, the ALJ determined Plaintiff could perform work as a hand packager, conveyor/feeder, and kitchen helper. (*Id*. at 28).

Both parties have now filed appeal briefs (ECF Nos. 17, 20), and this matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir.

2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing the claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage of the sequential evaluation does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

## II.     Discussion

Plaintiff raises the following issues on appeal: (1) whether the ALJ fully and fairly developed the record regarding his mental and physical RFC; (2) whether substantial evidence supports the ALJ's subjective complaint analysis; and (3) whether the ALJ's RFC determination is supported by the overall record.  After a thorough review of the record, the undersigned finds that remand is necessary to allow the ALJ to further consider the Plaintiff's RFC.

At the administrative hearing, Plaintiff testified he had not worked since his alleged onset date due to PTSD, depression, anxiety, bipolar disorder, back pain radiating into his legs, and difficulty sleeping.  (ECF No. 14-2, pp. 56-59).  He was prescribed Tylenol #3, which he took at night because it made him feel foggy.  Plaintiff indicated his pain did respond to this medication, reducing it to a 2 or 3 on a 10-point scale; however, sitting or walking for extended periods, and lifting, increased his pain to a 6 or a 7.  Additionally, the ALJ noted Plaintiff wore a back brace during the hearing.  (*Id*. at 57).

Plaintiff's activities were also somewhat limited, consisting only of caring for his personal hygiene, grocery shopping, playing video games, purchasing models from the hobby shop, painting the models, and watching television and movies. (ECF No. 14-5, pp. 12-18, 26-33).  His mother agreed with his reports concerning activities, opining that a tumor and cartilage problems in his knee interfered with his ability to climb stairs, kneel, and lift.  (ECF No. 14-6, pp. 44-53).

On October 3, 2016, Plaintiff underwent a physical therapy evaluation while hospitalized. (ECF No. 14-13, pp. 2-7).  He was able to ambulate but was hesitant to weight bear on both feet and exhibited limited hip and knee extension during his initial steps.  The therapist concluded he would benefit from physical therapy, while inpatient, to address: his standing, balancing, and gait deficits; decreased functional activity skills; decreased activity tolerance; decreased strength;

medical complexity; and risk of falls. His diagnoses included lumbosacral spinal stenosis, intervertebral disk disorder with radiculopathy, and intervertebral disk degeneration.

On October 12, 2016, orthopedist, Dr. John Harp, treated him for left anterior knee pain purportedly of several years' duration. (ECF No. 14-8, pp. 22-23, 28). Plaintiff exhibited a positive theater sign (pain in anterior knee that is felt with prolonged sitting) and a positive grind test (indicative of pain in the patellofemoral joint). Walking and climbing stairs were uncomfortable to Plaintiff, although he could ambulate without assistance. An x-ray of his left knee revealed a tiny calcification in the fibular shaft, consistent with a non-ossifying fibroma. Sunrise views also revealed a bilateral patella tilt. After diagnosing total femoral syndrome ("runner's knee"), Dr. Harp ordered an MRI, instructed Plaintiff regarding home exercises, prescribed a knee brace, and advised the continuation of over-the-counter anti-inflammatories.

On October 16, 2016, despite treatment compliance, Plaintiff reported persistent knee pain. (ECF No. 14-8, pp. 24-25). An MRI showed a small amount of patella alta (superior displacement of the patella within the trochlear groove of the femur). X-rays of his left knee revealed small knee joint effusion and mild patella Baja (patella distally positioned in comparison to the femoral trochlea). (ECF No. 14-8, pp. 26-27). Dr. Harp advised him to continue both the home exercise program and use of the knee brace for three months.

On February 14, 2017, Plaintiff sought out a second opinion regarding his knee. (ECF No. 14-8, pp. 13-15; ECF No. 14-12, pp. 6-8, 14-15). He reported knee pain of six months' duration, stating he had taken a break from his mixed martial arts practices and activities due to the pain. Plaintiff admitted he had never tried corticosteroid injections or physical therapy. Although he ambulated without difficulty, orthopedist, Dr. Joseph Bylak, noted some discomfort on palpation and full extension. X-rays showed a large inferior pole of the patella bilaterally, a small bony

lesion in the proximal fibula on the left, left jumper's knee, and possible chondromalacia of the patella. Dr. Bylak administered a corticosteroid injection and prescribed physical therapy.

Unfortunately, on March 30, 2017, Plaintiff reported no significant improvement following the injection. (ECF No. 14-8, pp.15-16; ECF No. 14-12, pp. 9-10). Dr. Bylak located a prior MRI of Plaintiff's left knee showing no meniscal pathology and intact cartilage. Further, a physical exam revealed inflammatory changes to the ligamentous mucosum or the infrapatellar fat pad, consistent with runner's knee. Dr. Bylak also opined that his symptoms were suspicious for synovitis in the anterior compartment that could require a synovectomy. He advised Plaintiff to continue with therapy.

On June 14, 2017, Plaintiff voiced complaints of lower back pain and fatigue. (ECF No. 14-8, pp. 43-46). He also reported occasional numbness in the third, fourth, and fifth toe. On exam, he exhibited some weakness in his left lower extremity with plantar flexion and thigh extension. Dr. Brent Reeves, Plaintiff's treating physician, prescribed Meloxicam for a diagnosis of chronic low back pain.

On September 12, 2017, Plaintiff's back pain persisted. (ECF No. 14-11, pp. 48-51). He complained that the Meloxicam was not helping as much as he would like. A physical exam revealed continued weakness in the left lower extremity with plantar flexion and thigh extension. Dr. Reeves prescribed Tramadol for chronic low back pain and ordered an x-ray of his lumbar spine. The x-ray revealed mild disk space narrowing in the lower thoracic and lumbar spine and a wedge deformity at the L1 level, probably developmental in nature. (ECF No. 14-11, p. 46).

On September 14, 2017, Dr. Reeves completed a physical RFC indicating Plaintiff could lift/carry 25 pounds frequently and 50 pounds occasionally; stand/walk for 30 minutes uninterrupted, for a total of four hours; and sit for three to four hours uninterrupted, for a total of

six hours. (ECF No. 14-11, pp. 17-19). He also opined Plaintiff would need five or more work/bathroom breaks, could only perform work activities continuously for four hours, for a total of six hours in an eight-hour workday, and could only occasionally climb, kneel, or crouch.

In September 2017 and November 2017, Drs. Jerry Thomas and Jonathan Norcross reviewed the evidence of record and found no evidence of a severe physical impairment. (ECF No. 14-3, pp. 18, 40-41).

At an October 31, 2017 exam with Dr. Reeves, Plaintiff reported continued fatigue and persistent back pain. (ECF No. 14-11, pp. 29-33). He also complained of numbness and weakness in his left lower extremity. Although Plaintiff admitted that the Tramadol "seemed to be doing relatively well," he did not want to take it daily. A physical exam revealed some weakness in the left leg, with a positive straight leg raise, but was otherwise normal. Dr. Reeves renewed his Tramadol prescription and diagnosed lumbar pain with radiculopathy.

A November 15, 2017 MRI of his lumbar spine revealed a small right paracentral disc protrusion at the L5-S1 level, indenting the subarachnoid space and right nerve sleeve root, and disk space narrowing in the lower thoracic spine. (ECF No. 14-11, pp. 27, 82; ECF No. 14-19, p. 13).

On December 7, 2017, at Dr. Reeves' request, Plaintiff consulted Dr. Shawn Moore regarding his back pain. (ECF No. 14-11, p. 73-81; ECF No. 14-19, pp. 8-12). Plaintiff indicated that the pain radiated into his left leg and foot and was associated with numbness, tingling, and slight weakness. A physical examination showed left dorsiflexion weakness and a diminished range of motion with lumbar flexion, extension, and lateral rotation; however, his straight leg raise tests were negative bilaterally. Dr. Moore reviewed the MRI and concluded Plaintiff's back pain was likely related to degenerative disc disease (DDD). He also noted that Plaintiff's disk

herniation was eccentric to the right, while his pain was on the left. Accordingly, Dr. Moore ordered an EMG and nerve conduction studies, prescribed Meloxicam and a back brace, and recommended physical therapy.

Physical therapy notes dated between December 22, 2017 and February 2018 document Plaintiff's treatment for lower back pain. (ECF No. 14-13, pp. 7-67; ECF No 14-14, pp. 2-8). He consistently rated his pain as a three or four on a 10-point scale, despite taking the Tramadol as prescribed.

At a January 11, 2018 physical therapy session, Plaintiff reported worsening back pain the previous evening after returning home from receiving a golfer of the year award at his country club. (ECF No. 14-13, p. 32). The therapist noted he was trying to avoid the sitting posture by crossing his legs and leaning forward.

On January 15, 2018, Dr. Reeves completed another physical RFC assessment. (ECF No. 14-11, 57-59). He opined that Plaintiff could lift/carry 10 pounds; sit uninterrupted for less than one hour, for a total of two hours per workday; stand continuously for two hours, for a total of four hours per workday; and perform any work activities for one hour uninterrupted, and a total of three or four hours per workday with hourly breaks. Additionally, he found Plaintiff capable of climbing, squatting, kneeling, crouching, and bending for less than two hours per day and balancing, reaching in all directions, and feeling for two hours per day. These limitations were reportedly due to his frequent urination, decreased lower extremity strength, and herniated lumbar disk. Dr. Reeves also opined Plaintiff could not even perform part-time work for more than 10 hours per week.

On January 15, 2018, Plaintiff requested a referral for a second opinion regarding his back pain. (ECF No. 14-11, pp. 88-92). He explained that the Gabapentin and physical therapy

prescribed by Dr. Moore was not helpful. An exam revealed continued weakness in the left lower extremity with plantar flexion, dorsiflexion, and thigh extension and a positive straight leg raise test on the left. Dr. Reeves provided a referral for a second opinion.

On February 27, 2018, Dr. Thomas Cheyne examined Plaintiff for complaints of back pain with frequent left lower extremity numbness. (ECF No. 14-12, pp. 11-13, 16-20). Plaintiff indicated he was not working due to "mental issues." A physical exam revealed tenderness across Plaintiff's lower back with mildly positive straight leg raises, mildly decreased sensation in his left lower extremity when compared to his right, and the ability to bend and touch only his knees. However, his gait was normal, he could walk on his heels and toes without difficulty, had good muscle strength and tone, and had good range of motion in his hips, knees, and ankles with no pain, effusion, instability, or crepitus. X-rays of his lumbar spine were normal, and Dr. Cheyenne reviewed his most recent MRI. Noting that Plaintiff could not take anti-inflammatories due to peptic ulcer disease and had already tried physical therapy to no avail, Dr. Cheyne referred him for lumbar epidural steroid injections. He also recommended light activity and the use of heat therapy.

On March 2, 2018, Plaintiff reported continued back pain and anxiety. On exam, Dr. Reeves documented continued weakness in his left lower extremity with plantar flexion, dorsiflexion, and thigh extension, and a positive straight leg raise test on the left. (ECF No. 14-11, pp. 84-87). Dr. Reeves prescribed Lisinopril for diagnoses of hypertension and deteriorated DDD.

On March 8, 2018, an EMG and nerve conduction studies were unremarkable. (ECF No. 14-19, pp. 29-34).

On March 27, 2018, pain specialist, Dr. Joseph Miller, examined Plaintiff for complaints of back and leg pain. (ECF No. 14-19, pp. 2-4). Dr. Miller noted Plaintiff had been physically active prior to the onset of his symptoms, participating in both mixed martial arts and cage fighting, but now felt he was losing muscle strength because he could no longer tolerate the level of activity required to maintain his physical fitness. Plaintiff was wearing a back brace and requested steroid injections. A physical examination revealed vague diffuse tenderness that became focal on the midline from the L1-L5 levels and on the left along the L4 dermatome with aberrant sensations, flexion decreased by pain, and L4 radiculopathy on the right more so than the left. He also exhibited pain with strength testing in his lower extremities, despite having a normal gait and posture. Dr. Miller diagnosed intervertebral disk disorder with radiculopathy of the lumbosacral region and other intervertebral disk degeneration in the thoracic region. He agreed that epidural injections might reduce some of the inflammation and swelling and give him relief in both his back and down the leg. It might also get his activity levels back so that he could exercise and strengthen himself. Plaintiff wished to proceed as soon as possible.

Plaintiff's pain was reportedly stable on April 11, 2018. (ECF No. 14-12, pp. 21-25). He had not been able to get the injections prescribed by Dr. Cheyne, as the doctor he was referred to was out of network. On exam, Dr. Reeves noted some tenderness to the lumbar spine with decreased motion with bending, but no other abnormalities.

Plaintiff attended physical therapy visits in May, June, and July 2018. (ECF No. 14-13, pp. 9-43; ECF No. 14-16, pp. 2-75; ECF No. 14-17, pp. 2-15; ECF No. 14-20, pp. 24-45). On May 15, 2018, he rated his pain level as a four but said it increased to a six after he played golf. The following month, Plaintiff reported that impact activities, such as prolonged standing or jogging exacerbated his back pain. In early July, Plaintiff reported walking more and trying to be

more active to aide in both weight loss and pain control. On July 30, 2018, he reported tingling in his lower extremity and voiced concerns about nerve damage to his spine. Although he was feeling stronger and his 20-pound weight loss had helped, he continued to experience lumbar pain, and his leg occasionally gave out on him. The therapist recommended he report this to his doctor.

On June 1, 2018, Plaintiff requested something for his back that would also treat arthritis. (ECF No. 14-12, pp. 26-31). Although he was taking Tylenol #3, he did not feel it was helping. Dr. Reeves prescribed Celebrex to accompany the Tylenol #3.

On June 5, 2018, Dr. Reeves opined that Plaintiff could lift and/or carry 10 pounds; stand and walk less than one hour uninterrupted, for a total of two hours; sit for two hours continuous, for a total of four hours; balance, reach in all directions, and feel for two hours out of an eight-hour workday; climb, squat, crawl, crouch, bend, and stoop for less than two hours per day; and he must lie down for four hours per day. (*Id*. at pp. 32-36, 41-45). He also opined Plaintiff should limit his exposure to hazards to less than two-thirds of the workday, and he would need five or more bathroom breaks per day.

On July 17, 2018, Plaintiff indicated that therapy was helpful, but he was experiencing frequent muscle spasms of increased intensity in his lumbar spine. (ECF No. 14-20, pp. 2-23). He was also walking more for weight loss.

On July 30, 2018, Plaintiff complained of worsening pain in his legs, left more than the right. He had been unable to schedule an appointment for injections, and he reported episodes of intense muscle spasms lasting a few minutes before releasing. He also indicated, however, that his back pain had improved. (ECF No. 14-17, pp. 20-25). A physical examination was unremarkable, and his mood and affect were noted to be within normal limits. Plaintiff rated his

pain as a three.  Dr. Reeves diagnosed a lumbar disk herniation with radiculopathy and again referred him for epidural injections.

At an August 1, 2018 physical therapy visit, Plaintiff reported that physical therapy and weight loss had "helped him so much with the pain."  (ECF No. 14-20, pp. 46-67).  Unfortunately, due to insurance issues, Plaintiff had to stop physical therapy on August 7, 2018.  (ECF No. 14-20, pp. 68-75; ECF No. 14-21, pp. 2-15).  The therapist noted that Plaintiff's pain had improved to a three and his range of motion and strength had returned to normal.

On August 29, 2018, pain specialist, Dr. Natalie Strickland, treated the Plaintiff for gradually worsening back pain.  (ECF No. 14-19, pp. 21- 27).  Although his gait was normal, he had pain on extension of his lumbar spine and tenderness in his lumbar facets, negative straight leg raise tests bilaterally, no muscle atrophy, normal strength and tone throughout except 4/5 dorsiflexion, and 2+ deep tendon reflexes.  Dr. Strickland concluded Plaintiff was experiencing lumbar radicular pain in his bilateral lower extremities.  She found no evidence of myelopathy and determined that a surgical referral was not necessary.  Accordingly, Dr. Strickland continued his medications and scheduled him for two lumbar epidural injections six to eight weeks apart.  She did not think any activity restrictions were indicated; however, it is also noted that the Plaintiff did not report an active lifestyle.

On October 29, 2018, Plaintiff presented in Dr. Reeves' office with complaints of pain all over.  (ECF No. 14-21, pp. 16-22, 28-32).  His medications were helping some and an exam was essentially normal.

On January 6, 2020, Dr. Reeves completed yet another physical RFC.  (ECF No. 14-2, pp. 44-48).  Noting pain and arthritis in the Plaintiff's hand, a herniated disk shown on MRI, chronic back pain, and edema and stiffness in his feet, he limited the Plaintiff to lifting and carrying 10

pounds; standing and walking one to two hours at a time, for a total of four hours; noted he would be limited in his ability to push and pull with the lower extremities; concluded he would need five or more work/bathroom breaks; and, determined he must lay in a supine position for a total of four to five hours per eight-hour workday. He then indicated Plaintiff could perform "any work activities in a normal workday" in combination for a total of three to four hours, but continuously for less than one hour. Additionally, Dr. Reeves restricted Plaintiff to balancing, handling, and feeling one-third of the workday and climbing, squatting, kneeling, crouching, bending, stooping, reaching in all directions, fingering, and gripping less than one-third of a workday. He also opined Plaintiff could not sit for six hours out of an eight-hour workday, sit/stand/walk in combination for eight hours; perform part-time work activities of any nature for more than 10 hours in a 40-hour workweek, had significant limitations in his ability to handle and work with small objects bilaterally, and required four or more unscheduled work breaks in an eight-hour workday due to physical restrictions. Dr. Reeves then specifically stated Plaintiff could work only part-time.

Despite finding Plaintiff's back impairment to be severe, the ALJ concluded his pain was amenable to treatment and concluded he could perform medium work with mental limitations.

While we agree that the evidence does not indicate Plaintiff is totally disabled, this assessment does not account for the limitations imposed by the herniated disk in Plaintiff's lower back and the resulting radiculopathy. Plaintiff's treating doctor, Dr. Reeves, completed several RFC assessments documenting Plaintiff's work limitations over the course of the relevant period. Because the ALJ failed to include any of these limitations in his RFC assessment, specifically the limitations in Plaintiff's ability to stand, walk, balance, stoop, bend crouch, and crawl, remand is necessary to allow the ALJ to reconsider Plaintiff's RFC.

On remand, the ALJ should also obtain and RFC assessment from Plaintiff's pain specialist and orthopedist, to further develop the record regarding the Plaintiff's physical RFC.

## IV. Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of March 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE